THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE POKÉMON COMPANY INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>MARCUS FRASIER,<br><br>Defendant. | No. 2:14-cv-112<br><br>PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**REDACTED**<br>**CONFIDENTIAL MATERIAL FILED UNDER SEAL** |

## I. INTRODUCTION

Pokémon submits this supplemental brief in accordance with the Court's May 29, 2014 Minute Order. See Dkt. #27. Pokémon's jurisdictional discovery has revealed the following additional contacts between Frasier's infringing activities and Washington:

- **Over 1,600** Washington users have downloaded the infringing Pokellector App;

- The infringing Pokellector Website has received **over 1,000** visits from Washington users;

- Frasier receives advertising revenue from users (including from users in Washington); and

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 1
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

- Frasier also receives referral revenue from ████████████████████████████████.

Given these additional connections between Frasier's infringing activities and the State of Washington, there can be no question that Frasier is subject to jurisdiction here.

## II. SUPPLEMENTAL STATEMENT OF FACTS

### A. Users of the Website and App Reside in Washington

Both Frasier's Pokellector Website and App are available to users throughout the U.S. and worldwide. Supp. Jennison Decl.[1] Ex. A (Frasier Dep. at 24:24-25:14, 71:1-7). Since April 2013, the Pokellector Website has received over 53,000 visits. Id., Ex. A (Frasier Dep. at 71:21-73:2), Ex. C (Frasier Dep. Ex. 3). The App is even more popular; between 10,000 and 50,000 users have installed the App through Google Play and over 135,000 users have installed the App on Apple's iTunes. Id., Ex. A (Frasier Dep. at 38:22-39:14), Ex. B (Frasier Dep. Ex. 1 at POKEMON001585), Ex. G (Decl. of Apple Inc. Custodian of Records (Oct. 9. 2014) ("Apple Decl."), ¶ 8).

Both the Website and App are used by Washington residents. According to Frasier's own records, users in Washington visited the Pokellector Website at least 1,019 times between April 1, 2013 and July 28, 2014. Id., Ex. A (Frasier Dep. at 71:21-73:2, 74:23-76:12), Ex. D (Frasier Dep. Ex. 4). Indeed, Washington ranks as the state with the tenth highest usage of the Pokellector Website. Id., Ex. A (Frasier Dep. at 76:10-24), Ex. D (Frasier Dep. Ex. 4). By registering on the Pokellector Website users can use the site to help manage their trading card collections. Compl., Ex. E at 14 ("You must be logged in to track your collection."). Users register for the Pokellector Website by providing an email address, user name, and password. Supp. Jennison Decl., Ex. A (Frasier Dep. at 43:9-20). Frasier records the IP address of all users at the time of registration. Id., Ex. A (Frasier Dep. at 43:23-44:3, 44:13-46:4, 78:1-12), Ex. E

---

[1] Supplemental Decl. of Judith Jennison In Supp. of Pl.'s Opp'n to Def.'s Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, to Transfer Venue (Oct. 10, 2014).

PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (NO. 2:14-CV-112) – 2
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

(Frasier Dep. Ex. 5). Those records reflect at least 22 registered users of the Pokellector Website registered from an IP address located in Washington. See Supp. Gonzalez Decl.,[2] ¶ 3. The Pokellector App has been downloaded from the Apple iTunes store to 1,674 users in the State of Washington. Supp. Jennison Decl., Ex. G (Apple Decl. ¶ 8).

B.  **The Website and App Generate Revenue From Washington**

The Pokellector Website and App generate income in two ways. See Supp. Jennison Decl., Ex. A (Frasier Dep. at 29:21-30:8). First, the App and Website display, along with the Pokellector Images, pricing information for the purchase of Pokémon TCG trading cards on the secondary market. See Compl. ¶ 32 (example of pricing information from App) & Ex. E at 20 (example of pricing information from Website). The pricing information includes a list of various third party websites selling each trading card, along with the price listed at each site and a hyperlink to that site. Id. ██████████████████████████████████ Supp. Jennison Decl., Ex. A (Frasier Dep. at 17:4-18:11, 19:4-16, 22:10-18, 79:16-20). ██████████████████████████████████ Id., Ex. A (Frasier Dep. at 21:3-22:2, 126:5-128:15), Ex. F (Frasier Dep. Ex. 20).

Second, the Pokellector App generates almost $200 per month in revenue through banner ads displayed in the App itself. Id. (Frasier Dep. at 30:22-31:9, 33:21-34:5). This revenue is generated when banner ads are displayed to users and when users click on those ads. Id. (Frasier Dep. at 31:11-24). Accordingly, Frasier earns money as the result of activity in Washington when ads are displayed to Washington App users.[3]

---

[2] Supplemental Decl. of Elva Gonzalez In Support of Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, to Transfer Venue (Oct. 10, 2014).

[3] Frasier has programmed the App to permit a third party to serve the ads, so Frasier himself has no knowledge of what users where have seen or clicked on advertisements. Supp. Jennison Decl., Ex. A (Frasier Dep. at 30:22-31:2). But given the number of users in Washington, there is a high likelihood that some of Frasier's revenue is generated by users in Washington.

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 3
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## III. ARGUMENT

As discussed in Pokémon's Opposition, this Court may exercise personal jurisdiction if: (a) Frasier has purposefully directed his activities or consummated some transaction with Washington (or a resident of Washington); (b) Pokémon's claims arise out of or relate to Frasier's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice. Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1227-28 (9th Cir. 2011); see also Dkt. #19, Pl.'s Opposition to Def.'s Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, to Transfer Venue ) (April 11, 2014) ("Opposition") at 5.

In the prior briefing, the parties focused on the impact of Frasier's infringing activities on Pokémon in Washington. Under the Calder "effects test," Frasier is subject to jurisdiction where he has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Marvix, 647 F.3d at 1228; see also Dkt. #10, Def.'s Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, to Transfer Venue (March 18, 2014) ("Motion") at 8-9; Opposition at 6. In its Opposition, Pokémon demonstrated that Frasier's infringing App and Website meet each element of the effects test, as construed by Washington Shoe. See Opposition at 6-8.

But Frasier's impact on Pokémon is not the only basis for jurisdiction here. In the Internet context, the Ninth Circuit "has recognized that 'tortious conduct on a nationally accessible website' is considered express aiming when the operation of that website is combined with . . . 'conduct directly targeting the forum.'" Cornett v. Gawker Media, LLC, No. 2:13-CV-01579-GMN, 2014 WL 2863093, at *3 (D. Nev. June 23, 2014) (citing Mavrix, 647 F.3d at 1229). The same analysis applies to mobile applications that access the Internet since they are, "for purposes of personal jurisdiction, equivalent to websites." Zherebko v. Reutskyy, No. C 13-00843 JSW, 2013 WL 4407485, at *4 (N.D. Cal. Aug. 12, 2013). While maintenance of a "passive website" alone may not be enough to establish jurisdiction, "operating even a passive

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO. 2:14-CV-112) – 4
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

website in conjunction with 'something more'... is sufficient." Mavrix, 647 F.3d at 1229 (citations omitted).

In Mavrix, the Ninth Circuit found that revenue from user-driven advertising on a website, coupled with evidence of users in the forum, supported the exercise of personal jurisdiction. 647 F. 3d at 1230. There, the plaintiff sued the operator of a celebrity gossip website after it published the plaintiff's copyrighted photos. Id. at 1222-23. The website did not sell any products, was owned and operated completely in Ohio, and did not advertise in California. Id. at 1224-25. The Court nonetheless found specific jurisdiction in California because the defendant "continuously and deliberately exploited the California market:"

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents.

Id. at 1230.

Likewise, the Pokellector App and Website earn revenue generated from users and visitors. Primarily, ███████████████████████████████████████████ ███████████████████████████████████████████ Supp. Jennison Decl., Ex. A (Frasier Dep. at 17:4-18:11, 19:4-16, 21:3-22:2, 22:10-18, 79:16-20, 126:5-128:15), Ex. F (Frasier Dep. Ex. 20). Notably, these links are intrinsically tied to the copyright-infringing Images; users must view an Image to obtain the pricing information and links to purchase a card. Id.; see also Compl. ¶ 32 (example of links from App) & Ex. E at 20 (example of links from Website). Further, Frasier earns revenue from banner advertising in the App, including revenue earned when users view or click on banner ads. Supp. Jennison Decl., Ex. A (Frasier Dep. at 30:22-31:24, 33:21-34:5); see also Compl. ¶¶ 29, 32 (examples of banner ad). This revenue covers Frasier's monthly costs of operating the Website. Supp. Jennison Decl., Ex. A (Frasier Dep. at 30:22-31:24, 33:21-34:5).

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 5
LEGAL123711540.2

There can be no question that this revenue is earned, in part, from activities in the State of Washington. A substantial number of visits to the Website, registered users of the Website, and users of the App are located in or otherwise tied to Washington. See supra, Section II.A. While no records reflect the exact amount of revenue from activities in Washington, Washington is the tenth highest state in terms of use of the Website and has more than 1,600 App users. Supp. Jennison Decl., Ex. A (Frasier Dep. at 76:10-24), Ex. G (Apple Decl., ¶ 8). Thus, like the defendant in Mavrix,[4] Frasier has exploited the Washington market to obtain revenue. "[W]here . . . a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." Id. at 1230.

Frasier may argue that he did not expressly target Washington or know how many users were in Washington, but that is irrelevant. Frasier has chosen to distribute his infringing App and Website all over the world, and he is reaping the benefits from his infringing activities (albeit modest benefits to date) both in and out of Washington. Had he chosen to view the analytics that are available to him he would have known that he had users in Washington. Accordingly, he had constructive knowledge of his Washington activities. See, e.g., DFSB Kollective Co. v. Bing Yang, No. C 11-1051 CW, 2013 WL 1294641, at *6 (N.D. Cal. Mar. 28, 2013) (finding that website "hit counters" showing number of visitors supported finding of actual or constructive knowledge of users in the forum state).

Moreover, Frasier's App and Website are not passive. Frasier allows users to register for his Website, and once registered, users can store information about their personal collections on the Website. Supp. Jennison Decl., Ex. A (Frasier Dep. at 43:15-20); Compl., Ex. E at 14 ("You must be logged in to track your collection."). There are at least 22 registered users from

---

[4] In Mavrix, the Court noted that some third party advertisers on the defendant's website had ads that specifically targeted the forum. But such targeted advertising is not a requirement; the Court there used it only as a proxy for proof of actual users in the forum. 647 F.3d at 1230. Here, there is ample evidence of users in Washington.

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO. 2:14-CV-112) – 6
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Washington. See Gonzalez Decl. ¶ 3. Users also can (and do) comment on particular Images on the website. See Compl., Ex. E at 22 (example of comments). Frasier encourages users to submit infringing images to him for display on the Website and App. Compl., ¶ 32 (image of App), Ex. E at 14 ("We have very few scans from this set. Consider submitting some[.]"). And finally, Frasier sells products on his Website. Supp. Jennison Decl., Ex. H. In Mavrix, the court found that similar features increased the interactive nature of the website and supported a finding of personal jurisdiction. 647 F.3d at 1222 (allowing visitors to comment on articles, join a membership club, and submit news tips and photos of celebrities increased interactivity of website).

In his Motion and Reply, Frasier relied on the Supreme Court's statement in Walden v. Fiore, that the relationship between the defendant and the forum must arise out of "contacts that the 'defendant himself creates with the forum State.'" __ U.S. __, 134 S. Ct. 1115, 1122 (2014) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)). As demonstrated above, through his infringing activities, Frasier has created his own contacts with Washington, even if this Court discounts the intentional injury he is causing to Pokémon. In Walden, the defendant seized cash from the plaintiffs (Nevada residents) in Georgia, who then filed a lawsuit in Nevada, alleging improper seizure. Walden, 134 S. Ct. at 1119-20. The Court found that the defendant lacked sufficient contacts with Nevada because "no part of [defendant's] course of conduct occurred in Nevada." Id. at 1124. But that holding regarding a physical event (seizing money) in a physical location (Atlanta) has no applicability here, where Frasier took intellectual property belonging to Pokémon in Washington and distributed it around the world (including in Washington), earning revenue from that distribution in Washington (and elsewhere). Indeed, the Supreme Court noted that the Walden facts, "do[] not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." See id. at 1125 n.9.

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 7
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

With respect to the last prong of the effects test, Frasier cannot dispute that he knew that his activities caused harm likely to be suffered in Washington. In copyright cases, "this requirement is generally satisfied when the plaintiff resides in the forum state." DFSB Kollective Co., 2013 WL 1294641, at *7; see also Mavrix, 647 F.3d at 1231 (economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable in that plaintiff's principal place of business).

Even when examining only Frasier's contacts with Washington outside of Pokémon, it is plain that the Pokellector Website and App are aimed at Washington and caused harm in Washington. Accordingly, this Court has jurisdiction over Pokémon's claims.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Frasier's Motion to Dismiss and Motion to Transfer Venue.

DATED this 10th day of October, 2014.

> s/ Judith B. Jennison, WSBA No. 36463
> Judith B. Jennison, WSBA No. 36463
> Breena M. Roos, WSBA No. 34501
> **Perkins Coie LLP**
> 1201 Third Avenue, Suite 4900
> Seattle, WA 98101-3099
> Telephone: 206.359.8000
> Facsimile: 206.359.9000
> E-mail: JJennison@perkinscoie.com
> E-mail: BRoos@perkinscoie.com
>
> Attorneys for Plaintiff The Pokémon Company International, Inc.

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 8
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# CERTIFICATE OF SERVICE

I certify that on April 11, 2014, I caused the foregoing **PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individual of record. In addition, I caused service to be made on the same individuals of record by the method indicated:

| | | |
|---|---|---|
| Shannon M. Jost, #32511 | ___ | Via hand delivery |
| Theresa H. Wang, #39784 | ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| **Stokes Lawrence, P.S.** | | |
| 1420 Fifth Avenue, Suite 3000 | _X_ | Via E-Filing |
| Seattle, WA 98101-2393 | ___ | Via Overnight Delivery |
| Sarah M. Matz (pro hac vice) | ___ | Via Facsimile |
| **Adelman Matz P.C.** | ___ | Via Email |
| 425 Park Avenue, 27th Floor | ___ | Other: _____ |
| New York, NY 10022 | | |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 10th day of October, 2014.

By: _/s/ Breena Roos_
    Breena Roos, WSBA No. 34501
    BRoos@perkinscoie.com
    **Perkins Coie LLP**
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

PLAINTIFF'S SUPPLEMENTAL OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS (NO.
2:14-CV-112) – 9
LEGAL123711540.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000