HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| THE POKÉMON COMPANY INTERNATIONAL, INC., | Case No.: 2:14-cv-112Z |
|---|---|
| Plaintiff, | MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE |
| v. | |
| MARCUS FRASIER, | |
| Defendant. | |
| | NOTE ON MOTION CALENDAR: OCTOBER 27, 2014 |

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx         -i-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## I. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT FRASIER IS SUBJECT TO SPECIFIC JURISDICTION

There are insufficient facts for the Court to exercise personal jurisdiction over Defendant here. As discussed in Defendant Marcus Frasier's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction Or, In the Alternative To Transfer Venue [Docket No. 10] (the "Motion") and his Reply in Further Support of the Motion [Docket No. 25] (the "Reply"), for the exercise jurisdiction to be warranted, Plaintiff must satisfy a three-prong test:

> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011). *See also* Motion at 7-8. Despite Plaintiff's attempt to show that it has satisfied "each element of the effects test, as construed by Washington Shoe" (Pl. Supp. Br. At 4), there are insufficient facts to warrant personal jurisdiction over Defendant here.

### A. PLAINTIFF HAS NOT SATISFIED THE 'EFFECTS' TEST UNDER CALDER V. JONES AS CONSTRUED BY WASHINGTON SHOE

"The 'effects' test . . . requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Mavrix*, 647 F.3d at 1228. In its opposition, Plaintiff argued that Washington Shoe's interpretation of the *Calder* 'effects' test should apply here. For the reasons stated in Defendants Motion and Reply, under *Walden,* jurisdiction is clearly not proper, as Defendants contacts with Washington are alleged to be through its interaction with Plaintiff. However, even construed under the analysis in *Washington Shoe,* as Plaintiff urges, Plaintiff has failed to demonstrate that the 'effects' test has been satisfied.[1] In *Washington Shoe,*

---

[1] As set forth in Defendant's Motion (pp. 9-13) and his Reply (pp. 1-8), in light of the Supreme Court's recent holding in *Walden v. Fiore*, -- U.S. --, 134 S. Ct. 1115, 1122 (2014), it is

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE -
2:14-cv-112Z

53406-001 \ 1932845.docx                    -1-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

the Court allowed jurisdiction over the defendant where the defendant "expressly aimed" its actions at the forum (Washington) because it engaged in intentional acts, aimed at the copyright of plaintiff that was held in Washington, which Defendant knew was held in Washington, where plaintiff incorporated and did business. *Washington Shoe*, 704 F.3d at 678-79. Here the facts are completely inapposite to the facts of *Washington Shoe* and as such jurisdiction is not proper.

### 1. There Is No Evidence that Defendant Aimed His Alleged Acts at Washington

As an initial matter, Defendant did not commit any intentional act. However, even if this Court accepts Plaintiff's allegations of copyright infringement as true for the purposes of this motion only, there is no evidence that any of Defendant's alleged acts were expressly aimed at the forum state.

As Plaintiff has acknowledged in its brief, the Pokellector Website and App are available to users throughout the U.S. and around the world. *See* Jennison Supp. Decl., Ex. A (Frasier. Dep. 24:24-25:11, 71:1-4). Yet, out of all of the users of the Pokellector Website and App, on average, less than 2% of those users are alleged to be residents of Washington. By way of example, since its public launch through July 28, 2014, Google Analytics reports that there have been approximately 53,244 sessions on the Pokellector Website worldwide. *See* Jennison Supp. Decl., Ex. C. Out of those however, only 1,019 sessions have originated from Washington – which equates to approximately 1.9% of all sessions. *See* Jennison Supp. Decl., Ex. D. Plaintiff attempts to inflate the importance of this number by emphasizing that Washington is in the top ten States, out of sessions from the United States. However looking at the numbers themselves, the overall percentage of sessions originating from Washington amounts to only 3.20%, of all

---

defendant's position that the holding in *Washington Shoe*, should not apply. In *Walden,* the Supreme Court held that when applying *Calder's* principles, the Court cannot focus solely on Plaintiff's contacts with the Defendant rather than assessing the defendants contacts with the forum. *See Walden*, 134 S. Ct. at 1122 (2014) ("however significant plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated' . . . [and the] 'minimum contacts' analysis looks to defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there").

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE -
2:14-cv-112Z

53406-001 \ 1932845.docx                    -2-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

sessions originating from the United States. *See id.* The importance of being in the top ten is further undercut by the fact that ranked states numbers 8-11 each amount to approximately 3% of sessions originating from the United States, with numbers 12 and 13 at 2.97%, and 2.76% not far behind. *See id.* Moreover these numbers do not take into account the sessions initiated by Plaintiff related to this lawsuit. The percentage of registered users on the Pokellector Website and installations of the Pokellector App are similarly nominal. Out of the approximately 1,200 registered users, only 22 are alleged to reside in Washington, which represents approximately 1.8% of all registered users. *See* Jennison Supp. Decl. Ex. E; Supp. Gonzalez Decl., ¶3. The Pokellector App has been installed by between 10,000 and 50,000 users through Google Play and by over 135,000 through iTunes. Out of those, Plaintiff claims that there are 1,674 users in the State of Washington (approximately 1.2% percent).

Even if Plaintiff is correct about the amount of users of the App and Website that originate from Washington, the numbers are nominal at best, ranging from 1.2%-1.9%. In addition to the very small overall percentage of users that are alleged to reside in Washington, the usage is not evidence that Defendant aimed any of his activities at Washington. At best these numbers are evidence of the fact that the App and Website are available to the consuming public in the United States and in various countries around the world, and out of that consuming public, less than 2% of consumers who use Defendant's App and Website may reside in Washington. This is not sufficient to demonstrate that Defendant aimed any activity at Washington.

In addition, the only 'advertising' that Defendant has ever done, if it can be called that, was three Facebook campaigns that were not directed in any way towards Washington. *See* Matz Decl., Ex. 3, FRASIER000012. There is simply no evidence that Defendant directed his App or Website towards Washington residents.

Plaintiff's argument that this case is analogous to internet cases where tortious conduct on a website is considered express aiming when the operation of the website is combined with conduct directly targeting the forum, is unpersuasive as the facts here are wholly unlike the cases cited by Plaintiff in its supplemental briefing. *See e.g. Cornett v. Gawker Media, LLC*, 2:13-CV-

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE -
2:14-cv-112Z

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

53406-001 \ 1932845.docx                          -3-

01579-GMN, 2014 WL 2863093 (D. Nev. June 23, 2014) (the "something more" is satisfied where "defendant individually targeted a plaintiff known to be a forum resident" holding that by making telephone calls to Nevada, researching and publishing an article about events that occurred in Nevada Gawker directly targeted Nevada); *Mavrix,* 647 F.3d at 1230 (finding specific jurisdiction where a "substantial number of hits" came from California, website had "advertisements directed to Californians," Defendant operated a website with a "specific focus on the California-centered celebrity and entertainment industries," and based on "website's subject matter" court concluded that defendant anticipated, desired and achieved a substantial California viewer base, as the audience was an integral component of the defendant's business model and its profitability).

Here none of those factors exist. Defendant has not researched or published content about events that occur in Washington, the hits from Washington are nominal at best and cannot be considered "substantial". There is no evidence that any of the advertisements on Defendant's App are directed at Washington, nor is there any evidence that there is any focus on Washington or that Washington is an integral component of Defendant's profitability.

The alleged $35 a month that Defendant allegedly derives from Amazon is in gift certificates and Defendant was not even aware of where Amazon is located. *See* Jennison Supp. Decl., Ex. A, Frasier Dep., 21:18, 22:19-20. Moreover, Plaintiff's argument that because Defendant has banner ads in the App and some App users in Washington, that he should be subject to personal jurisdiction because he 'earns money as a result of activity in Washington when ads are displayed to Washington App users' stretches logic too far. Less than two percent (2%) of the visitors to Defendant's Website and less than two percent (2%) of the users who have downloaded Defendant's App are based in Washington.

If having web traffic, no matter how small, were the standard for subjecting a defendant to personal jurisdiction, then any person who operated a website in the United States would be subject to personal jurisdiction in every state whose residents visited the website. But that is not the law. Here Plaintiff is the only real contact with the forum, and focusing on plaintiff's

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE -
2:14-cv-112Z

-4-

53406-001 \ 1932845.docx

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

contacts with the forum and defendant's knowledge of those contacts "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis . . . [and] improperly attributes a plaintiff's forum connections to the defendant." *Walden*, 134 S. Ct. at 1124-25. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122. Here as in *High Tech Pet Prod., Inc. v. Shenzen Jianfeng Elec. Pet Prod. Co. Ltd.,* 2014 U.S. Dist. Lexis 29772, *19-21 (E.D. Cal. Mar. 6, 2014), Plaintiff has failed to identify any evidence that Defendant directed advertising to consumers in Washington, nor has Plaintiff shown any evidence that Defendant's online presence was substantially directed towards Washington.  Plaintiff has only speculation. *See* Pl. Supp. Br. at fn. 3 ("there is a *high likelihood* that some of Frasier's revenue is generated by users in Washington") (emphasis added); *Telemedicine Solutions LLC v. WoundRight Techs., LLC,* 2014 U.S. Dist. LEXIS 33232 (N.D. Ill. Mar. 14, 2014) (where "'the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution.'" . . . a plaintiff cannot satisfy the express aiming test "simply by showing that the defendant maintained a website accessible to the residents of the forum state and alleged that the defendant caused harm through that website").  Here the evidence simply does not support Plaintiff's argument.

### 2. Defendant has not aimed any activities at copyrights of Plaintiff that are held in Washington, which Defendant knew were held in Washington

Plaintiff is a Delaware Corporation with offices in Bellevue, Washington, San Diego California and London, United Kingdom.  *See* Matz Decl., Ex. 4, Plaintiff's Supplemental Discovery Responses, Interrogatory Response Nos.: 1, 2.  Plaintiff has employees and officers at each of the above mentioned locations. *See id.* Response No. 4. Plaintiff is 100% owned by The Pokémon Company, in Japan ("TPC").  *See* McGowan Dep., Tr. 11:11-16.  Plaintiff conducts its trading card business on a "purchase and sale" basis in the United States.  It prints cards through a contract manufacture in Raleigh, North Carolina, and such cards are packed either in Raleigh or at a premises in South Dakota.  *See id.* McGowan Dep., Tr. 89:10-19.  Plaintiff also runs a

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx                -5-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1 | direct to retail site called pokemoncenter.com, for which Amazon fulfills orders from fulfillment
2 | centers in Indiana, Kentucky, Nevada, Tennessee and Washington. *See id.* McGowan Dep., Tr.
3 | 93:23-94:17; Ex. 7. As such Plaintiff cannot argue that its only presence is in Washington.

In addition, the facts from jurisdictional discovery have borne out that the ████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ Pokémon Trading Cards are comprised of various visual graphic and text elements. *See e.g.* Matz Decl., Ex. 6. The artwork, and the non-text patterns on the cards are created by employees of a company called Creatures, in Japan. *See* Matz Decl., Ex. 1, McGowan Dep. Tr. 36:16-37:8. ████████████████████████████████████

██████████████████████████████████████████████████████████████

████████ Even assuming *arguendo*, that TPC has ownership and/or the right to license the artwork, it has not conveyed ownership or an exclusive license to Plaintiff, in any written instrument. To this end, many of the registrations that Plaintiff's copyright infringement claim is based on do not even claim the 2-D artwork as part of the copyright registration. *See e.g.* 4/10/14 McGowan Decl., Ex. B, VA1-702-480 (excluding 2-D artwork and claiming "translation); VA1-719-357 (excluding 2-D artwork and claiming "text, translation"); VA1-719-359 (same). For the registration in which Plaintiff does claim ownership of the 2-D artwork, Plaintiff has represented to the Copyright Office that ownership was transferred to it "[b]y written agreement." *See e.g.* 4/10/14 McGowan Decl., Ex. B, VA1-736-144.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[2] The License Agreement states that it is between Pokemon USA, Inc. (Plaintiff's predecessor), and TPC. *See* Matz Decl., Ex. 2. Plaintiff effectuated a name change in 2009. *See id.*, Ex. 5.

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE -
2:14-cv-112Z

53406-001 \ 1932845.docx         -6-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Here, there is no writing that transfers ownership and/or an exclusive license over the artwork to Plaintiff. Plaintiff testified that its basis for both its statement in its Opposition [Docket No. 19] that it "owns exclusive rights under the Copyright Act for a number of trading cards, including their original artwork and/or text" and McGowan's corresponding statement in his declaration that Plaintiff owns exclusive rights under the Copyright Act is a combination of the "license agreement between TPC and TPCi, combined with . . . collective understandings of the parties in subsequent course of dealings," "things that we know from having worked with TPC and Creatures over time." *See* McGowan Dep. Tr. 42:7-43:21.

However it is well settled law that unwritten 'understandings' are insufficient to transfer ownership and/or exclusive rights in and to copyrights as a matter of law. *See* 17 U.S.C. 204(a) (A transfer of copyright ownership[3], other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent); *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (Section 204(a)'s "requirement is not unduly burdensome.... The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so"); *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010) (allegations of broader oral agreement cannot circumvent, and are barred by 204(a)). Plaintiff may try to argue that it is the owner of the translated text on the cards, which is consistently what Plaintiff has claimed ownership of in its copyright registrations. *See* 4/10/14 McGowan Decl., Ex. B, VA1-702-480 (excluding 2-D artwork and claiming "translation"); VA1-719-357 (excluding 2-D artwork and claiming "text, translation"); VA1-719-359 (same). However this argument is similarly defective.

---

[3] A "transfer of copyright ownership" is defined as an "assignment . . . exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright." *See* 17 U.S.C. §101.

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx -7-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

1     Plaintiff's role is to 'localize' the playing cards, which consists of translating the name of the Pokemon character, and the text on the card. *See* Matz Decl., Ex. 1, McGowan Dep. 22:17-23:12 (the evolution chain is a straight translation); 23:13-24 (90% of character names are created in Plaintiff's office); 27:1-15 (the hit points number in the top right "will always be the same"); 27:16-28:23 (the attacks below the artwork will always be similar "ideas", the numbers will be identical and the symbols to the left of the attacks will be universal); 30:23-31:6 (in the white bar around the picture is height, weight and artists' name which "will always be the same"); 31:7-17 (flavor text description of the Pokemon is "created by people in the office in Seattle"); and 31:19-25 (resistances and strengths, other than translating, will be the same).

    Regardless of whether these translations are ultimately copyrightable, which is doubtful, Plaintiff does not own the rights to them. To the contrary of Plaintiff's claim that it "owns exclusive rights under the Copyright Act in these copyrights and controls its exclusive rights from its headquarters in Bellevue, Washington"[4] the License Agreement provides ▬

▬

▬

▬

▬

▬

▬ Similarly, ▬

▬

▬

▬

▬

▬

---

[4] As stated in Plaintiff's Complaint (Compl. ¶11), 4/10/14 McGowan's Decl and Plaintiff's Opposition at pg 1.

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx      -8-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

In *Washington Shoe*, even if it were not undermined by *Walden,* the Court's holding expressly relied on the Defendants "knowledge of both the existence of the copyright and the forum of the copyright holder." *Washington Shoe*, 704 F.3d at 678-79. Here Plaintiff does not own or control the copyrights and trademarks at issue. Instead, they are owned and controlled by Japanese companies who, at best, have given Plaintiff a non-exclusive license for their use.

Plaintiff's lack of ownership in the copyrights and trademarks at issue, not only severely damages its reliance on *Washington Shoe*, or any iteration of the *Calder* 'effects' test, but it also raises serious concerns as to whether Plaintiff has any right to maintain the instant action.

It is well settled that where a plaintiff is neither an exclusive licensee nor a co-owner/owner in a copyright, it lacks standing to sue. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) (because Sybersound is neither an exclusive licensee nor a co-owner in the nine copyrights, it lacks standing to bring copyright infringement claims); *Signeo USA, LLC v. SOL Republic, Inc.*, Case No.: 11-CV-06370, 2012 WL 2050412 (N.D. Cal. June 6, 2012) ("[w]here the licensing agreement is nonexclusive or does not confer a property interest in the mark that can be characterized as an assignment, the licensee does not have standing to bring an infringement action").

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Such appointment / assignment of a cause of action without a transfer of ownership is prohibited. *See Nafal v. Carter*, 388 F. App'x 721, 723 (9th Cir. 2010) (where the "assignment documents at issue here did not actually grant Plaintiff an ownership interest in an exclusive copyright license. Rather, the documents were a disguised assignment of a cause of action prohibited under *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 884-89 (9th Cir.2005) (en banc)).

//

//

//

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx                    -9-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

## II. PLAINTIFF'S ABILITY TO LITIGATE IN MULTIPLE DISTRICTUS SUPPORTS TRANSFER OF THIS ACTION PURSUANT TO 28 U.S.C. § 1404(A), TO THE EASTERN DISTRICT OF PENNSYLVANIA

As set forth in Defendant's Motion (pp. 22) and Reply (pp. 10-11), in the event Defendant's motion to dismiss is denied, consideration of the parties' relative financial constraints and abilities to litigate in other jurisdictions, also supports a transfer of venue here. *Hansen v. Combined Transp., Inc.*, 2013 U.S. Dist. LEXIS 160475 *8-9 (W.D. Wash. Nov. 7, 2013) ("the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration"); *Celestial Mechanix, Inc. v. Susquehanna Radio Corp.,* 2005 U.S. Dist. LEXIS 7920 *7-8 ("the relative ability of the parties to absorb the costs associated with litigating in a distant forum is a valid consideration."). In the past five years, in addition to the instant litigation, Plaintiff has been a party to six (6) other lawsuits, only one of which was in Washington, in which Plaintiff was sued for wrongful termination. *See* Matz Decl., Ex. 5, Supplemental Response to Request No. 12; Ex. 1, McGowan Dep., Tr. 88:6-8. The other litigations were in the Southern District of New York, the Northern District of Texas (where the defendant was based), Los Angeles, California and the Bankruptcy District Court in Massachusetts. *See* Matz Decl., Ex. 5, Supplemental Response to Request No. 12.

Given that none of the other recent litigations in which Plaintiff was a named party have been commenced by Plaintiff in Washington, it is clear that Plaintiff is comfortable and has the financial ability to litigate in a different form, whereas Defendant does not.

## III. CONCLUSION

WHEREFORE, and for all of the reasons set forth above and in Defendant's moving and reply papers Defendant respectfully requests that the Court grant the instant motion, dismissing the complaint for lack of personal jurisdiction or transferring the venue of this action.

//

//

//

//

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx

-10-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

DATED this 27th day of October, 2014.

               STOKES LAWRENCE, P.S.

             By:   *s/ Shannon M. Jost*
                Shannon M. Jost (WSBA #32511)
                shannon.jost@stokeslaw.com
                Stokes Lawrence, P.S.
                1420 Fifth Avenue, Suite 3000
                Seattle, WA 98101
                (206) 626-6000
                Fax: (206) 464-1496

                *Of Counsel:*

                *s/ Sarah M. Matz*
                Sarah M. Matz
                sarah@adelmanmatz.com
                Adelman Matz, P.C.
                425 Park Avenue
                27th Floor
                New York, NY 10022

             Attorneys for Defendant Marcus Frasier

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx        -11-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2014, I caused the foregoing MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Judith B. Jennison
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
*JJennison@perkinscoie.com*

Breena Roos
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
*BRoos@perkinscoie.com*

Sarah Matz
Adelman Matz PC
425 Park Avenue, 27th Floor
New York, NY 10022
*sarah@adelmanmatz.com*

*s/ Shannon M. Jost*
Shannon M. Jost (WSBA #32511)
Stokes Lawrence, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
(206) 626-6000
Fax: (206) 464-1496
shannon.jost@stokeslaw.com

Attorneys for Defendant

MARCUS FRASIER'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO TRANSFER VENUE - 2:14-cv-112Z

53406-001 \ 1932845.docx

-12-

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000